UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-11644-RGS

CENTAUR DIAGNOSTICS, INC.

v.

LOUIS MITTEL

v.

ERIK DUHAIME

MEMORANDUM AND ORDER ON COUNTERCLAIM DEFENDANT AND THIRD-PARTY DEFENDANT'S MOTIONS TO DISMISS

November 25, 2019

STEARNS, D.J.

As described in defendant Louis Mittel's counterclaims (against Centaur Diagnostics, Inc.) and his third-party Complaint (against Erik Duhaime, Centaur's CEO) (collectively counterclaims or CC), Mittel and Duhaime met in early 2013 while Mittel was a graduate student in statistics at Columbia University. Duhaime was then a student at MIT's Sloan School of Management. Mittel shared with Duhaime his idea for an app, "similar to a dating app, to connect medical personnel with images, using statistics to generate better diagnoses for medical conditions, specifically for moles and skin conditions and the statistical methods to accomplish this." CC ¶ 20. The

two men discussed forming a company together based on Mittel's idea, and in 2013 and 2014, engaged in numerous discussions about aspects of the proposed venture. They also, however, "confirmed that they were committed to obtaining their Ph.D.[']s prior to launching a business." CC ¶ 26. In March of 2017, without informing Mittel, Duhaime incorporated Centaur in Delaware. In the summer of 2017, Mittel introduced Duhaime to several business advisors and potential investors.

After graduating in August of 2018, Mittel formally sought to join Centaur. During the course of negotiations, citing to limitations imposed by Centaur's participation in start-up incubation programs and conditions of investment funding, the amount of equity Duhaime offered to Mittel decreased from 10-15% (October of 2018, CC ¶ 46), to 5% (February of 2019, CC ¶ 56), and ultimately to 1.5% (April of 2019, CC ¶ 66). Mittel and Duhaime came to a final agreement on the terms of Mittel's employment in May of 2019. Mittel rejected a requirement that he relocate from New York to Boston (where Centaur is based). As a compromise, Mittel and Duhaime agreed that Mittel's position as Chief Data Officer would be "based in Boston." CC ¶ 76. In terms of compensation, Mittel was to be paid an annual salary of $125,000 with a signing bonus of $30,000, and the right to purchase, at $.07 a share, 78,402 shares (1.5%) of Centaur stock. The stock

2

was to be released to Mittel according to a vesting schedule set out in a Stock Purchase Agreement (SPA), beginning with the completion of one year of employment at Centaur or upon an earlier discharge without cause. In the event of a discharge with cause, Centaur had the right to repurchase Mittel's shares. Mittel also signed a one-year post-employment non-competition agreement in exchange for four payments totaling half his annual salary.

Mittel started at Centaur on May 20, 2019 and tendered a check for $5,488.15 for the stock purchase. According to Mittel, he quickly realized that his was not the leadership role that Duhaime had promised during their negotiations, and that further, Duhaime expected him to work full-time out of Centaur's Boston office. Mittel offered to relocate to Boston in exchange for a 5% stake in Centaur, but Duhaime refused. In late June, Duhaime caused Centaur to adopt a policy requiring employees to be physically present in the Boston office from 9:30am to 6pm on weekdays unless excused by a manager. Because other employees were permitted to work remotely but he was not, Mittel believed that the policy was targeted at him to manufacture a reason to dismiss him for cause.

Centaur preemptively filed its Complaint against Mittel on July 31, 2019 (seeking declaratory judgment of the terms of Mittel's employment, his intellectual property rights, and his rights under the stock purchase

agreement, while asserting that Mittel had breached his employment agreement). On August 2, 2019, Centaur terminated Mittel for cause, citing, *inter alia*, his absences from Centaur's Boston office. Mittel responded with the Amended Counterclaims on September 26, 2019, asserting claims against Centaur and Duhaime for deceit and negligent misrepresentation (Counts I & II), against Centaur for rescission, breach of contract, and violation of the covenant of good faith and fair dealing (Counts III, V, and VI); and against Duhaime for breach of fiduciary duty, unjust enrichment, and violation of the Massachusetts Fair Business Practices Act, Gen. Laws ch. 93A (Counts IV, VII, and VIII). Centaur and Duhaime move to dismiss the Counterclaims for failure to state claims for which relief may be granted under Fed. R. Civ. P. 12(b)(6).

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, the factual allegations of a complaint must "possess enough heft" to set forth "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 559 (2007); *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008). As the Supreme Court has emphasized, this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action

will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

*Deceit and Negligent Misrepresentation*

Mittel alleges that to induce him to join Centaur at a lower equity interest than he was initially promised, Duhaime knowingly, recklessly, or negligently made a series of false statements.[1] These include:

> a. By email of April 1, 2019, Duhaime told Mittel that he would be an important part of the senior leadership/executive team;
>
> b. By phone in late April of 2019, Duhaime told Mittel that he would be invited to California as part of the leadership team over the summer (presumably to meet with investors);
>
> c. In late March of 2019, Duhaime told Mittel that he would be responsible for selecting interns from a pool of 100 candidates and by email of April 4, 2019, he told Mittel that he would be responsible for supervising the interns;
>
> d. By email of April 4, 2019, Duhaime told Mittel that he would participate in decisions about office location;
>
> e. By email of April 1, 2019, Duhaime told Mittel that he could not grant him the equity interest they had discussed (10-15%) based upon the feedback from [startup incubator] YC and Steve Loughlin [of Accel, a venture capital investor in Centaur], but Duhaime never disclosed Mittel's role in the founding of the business to YC or Accel;
>
> f. By email of April 1, 2019 and in subsequent conversations, Duhaime told Mittel that [Centaur] would never

---

[1] In his employment agreement, Mittel agreed that claims arising out of his relationship with Centaur would be governed by Massachusetts law. *See* Dkt # 6-1 at 3.

5

agree to grant an equity interest of more than 3% to any employee moving forward (with the sole exception of a "genius 50 year old executive type who is making $1m/year and we need desperately for some reason") and laid out the parameters for equity grants going forward;

g. By email of April 1, 2019 and in phone conversations in late 2018 and early 2019, Duhaime told Mittel that it might well make sense for Mittel to build out the data team in New York instead of in Boston;

h. By email of April 1, 2019 and in subsequent phone conversations, Duhaime told Mittel that he would make up for the equity he had lost through future equity grants once he came on board and [that] this was how people that join companies early end up with substantial stakes in the company at exit; and

i. By email of April 1, 2019 and in subsequent communications, Duhaime told Mittel that he would have flexibility with work location.

CC ¶ 61.

The court agrees with Centaur and Duhaime that these statements are not actionable. To make out a claim for deceit, Mittel must establish "that [Centaur and/or Duhaime] made a false representation of a material fact with knowledge of its falsity for the purpose of inducing [Mittel] to act thereon, and that the [Mittel] relied upon the representation as true and acted upon it to [his] damage." *Int'l Totalizing Sys., Inc. v. PepsiCo, Inc.*, 29 Mass. App. Ct. 424, 431 (1990). "A statement on which liability for misrepresentation may be based must be one of fact, not of expectation, estimate, opinion, or judgment." *von Schonau-Riedweg v. Rothschild Bank AG*, 95 Mass. App. Ct. 471, 497 (2019). Here, to the extent that they were

false and that Mittel relied on them in accepting Centaur's employment offer,[2] statements (a)-(d) concerning (1) the prominence of Mittel's role at Centaur, (2) his inclusion in a then yet-to-be-scheduled California business trip, or (3) his role in selecting and supervising interns, reside in the non-actional nebulae of seller's talker, inflated expectations, mere opinion, and puffery. Similarly, statements (f) and (g) regarding "genius grants" and the building out of a data team someday in New York do not amount to promises, only speculation about Centaur's future business plans. *See McCartin v. Westlake*, 36 Mass. App. Ct. 221, 232 n.11 (1994) ("[B]usiness plans for the future are not actionable because the statements are neither statements of fact nor statements of present intent.").

Moreover, where, as here, "[a] contract was fully negotiated and voluntarily signed, [then] plaintiffs may not raise as fraudulent any prior oral assertion inconsistent with a contract provision that specifically addressed the particular point at issue." *Starr v. Fordham*, 420 Mass. 178, 188 (1995). Because Mittel's employment agreement includes terms pertaining to equity

---

[2] Mittel does not allege that he was promised a role other than as Chief Data Officer, the position for which he was hired. The court also notes that Mittel alleges that Centaur's two interns were already hired when he joined the company in May of 2019, and that he did not supervise one of the interns because "she did not feel 'comfortable' reporting to Mittel." CC ¶ 87.

and work location (thereby implying Centaur's office location), statements (d)-(i) are barred by the agreement's integration clause.[3] *See* Dkt # 6-1 at 3 ("This letter agreement and Exhibit A supersede and replace any prior agreements, representations or understandings (whether written, oral, implied or otherwise) between you and the Company and constitute the complete agreement between you and the Company regarding the subject matter set forth herein."). As Centaur notes, the integration clause also bars a claim for negligent misrepresentation. *See Sound Techniques, Inc. v. Hoffman*, 50 Mass. App. Ct. 425, 432 (2000) ("To ignore a merger clause and allow recovery for a negligent misrepresentation does little to promote honesty and fair dealing in business relationships.").

*Contract-Based Claims*

The court agrees with Centaur that Mittel has not alleged a plausible breach of contract claim. Mittel identifies as the breach Centaur's failure to uphold the SPA by issuing and holding in escrow his share certificates after he tendered the purchase price. "Under Massachusetts law, a breach of contract claim requires the plaintiff to show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform,

---

[3] As to be seen, this is not to say that the court agrees with Centaur's interpretation of the work location clause of the employment agreement.

8

(3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." *Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013), citing *Singarella v. City of Boston,* 342 Mass. 385, 387 (1961). Quite simply, Mittel does not plead that he suffered any harm as a result of Centaur's failure to issue physical stock certificates.

Likewise, the court agrees with Centaur that Mittel has not pled a basis for the equitable remedy of rescission. "In Massachusetts, rescission requires proof by clear and convincing evidence of a mutual mistake upon an essential element of the agreement," *Browning-Ferris Indus., Inc. v. Casella Waste Mgmt. of Massachusetts, Inc.*, 79 Mass. App. Ct. 300, 313 (2011), resulting in the unjust enrichment of one of the parties. *Demoulas v. Demoulas*, 428 Mass. 555, 580-581 (1998). Mittel has not identified such a mutual mistake. As a fallback, Mittel asserts a failure of consideration because Centaur has not made any of the payments it promised in the non-competition agreement. Here, the non-compete recites the payments as the consideration, and Centaur's failure to pay is at most a claim for a breach of contract.[4] "There is ample authority for refusing rescission where there has

---

[4] Mittel does not assert the non-payment as a breach of contract and Centaur argues persuasively that such a claim would presently be premature because the non-compete agreement provided that Mittel would be paid in four "approximately equal portions" during the one-year non-competition

9

been only a breach of contract rather than an utter failure of consideration or a repudiation by the party in breach." *Worcester Heritage Society, Inc. v. Trussell*, 31 Mass. App. Ct. 343, 345 (1991).

The court agrees with Mittel, however, that he has pled a viable claim for a breach of the covenant of good faith and fair dealing. "The implied covenant of good faith and fair dealing provides 'that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. . . .'" *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471 (1991) (citation omitted). Under the SPA, Mittel would have been entitled to receive 25% of the stock he had purchased had he been terminated without cause.[5] In light of Mittel's allegations that (1) he explicitly rejected as a condition of employment that he relocate to Boston, (2) that the language in the employment agreement was subsequently modified to reflect that his position was only "based in Boston," and (3) that Centaur subsequently adopted a work-on-site policy that applied only to him as a pretense for justifying his discharge, a plausible

---

period. Dkt # 6-1 at 20. That Mittel has not received a payment since his August of 2019 termination does not at this time constitute a breach.

[5] According to the employment agreement, "[Mittel's] employment with [Centaur] will be 'at will,' meaning that either [he] or [Centaur] may terminate [his] employment at any time and for any reason, with or without cause." Dkt #6-1 at 3.

10

inference can be drawn that Centaur deliberately sought to deny Mittel the fruits of his contract. *See id.* at 471-472.

*Breach of Fiduciary Duty/ Unjust Enrichment / Chapter 93A*

According to Mittel, Duhaime owed him a fiduciary duty because the two men embarked on a joint venture.

> The key requirement in finding [the] existence [of a joint venture] is an intent to associate." *Gurry v. Cumberland Farms, Inc.,* 406 Mass. 615, 623 (1990). "[F]actors indicating such an intent include an agreement among the participants for joint profits and a sharing of losses; a contribution of money, assets, talents, etc., to a common undertaking; a joint property interest in the subject matter of the venture; and a right to participate in the control of the venture. *Id.* at 623-624.

*Massachusetts Prop. Ins. Underwriting Ass'n v. Georgaklis*, 77 Mass. App. Ct. 358, 361-362 (2010). The court agrees with Duhaime that Mittel has not plausibly pled "an agreement among [them] for joint profits and a sharing of the losses." According to the counterclaims, Mittel shared with Duhaime "his idea for an app," CC ¶ 20, and in 2013-2014, the two men brainstormed and discussed various aspects of starting a business around Mittel's concept. *See* CC ¶ 23. However, the men "confirmed that they were committed to obtaining their Ph.D.[']s prior to launching a business," CC ¶ 26, which for Duhaime, was two years from 2015, *see* CC ¶ 25, and for Mittel, not until 2018. At best, these allegations amount to plans to form a *future* joint venture that never came to fruition, the tentative nature of which is

11

underscored by the fact that Mittel does not allege that he contributed any physical resources or cognizable intellectual property to the effort (nor does he allege that he engaged in substantive discussions with Duhaime from 2015 until after the founding of Centaur in 2017). *See Georgaklis*, 77 Mass. App. Ct. at 362 (future intent to enter into an association does not create a joint venture). Consequently, the unjust enrichment claim also fails. Finally, because Mittel has not alleged any actionable misrepresentation or misappropriation, the court will also dismiss his Chapter 93A claim.

ORDER

For the foregoing reasons, third-party defendant Duhaime's motion to dismiss is <u>ALLOWED</u>, counterclaim defendant Centaur's motion to dismiss is <u>DENIED</u> as to Count VI (breach of the covenant of good faith and fair dealing), and is otherwise <u>ALLOWED</u>.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE